UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHELLE ADAMS, § | | |
| Plaintiff, § | | |
| § | | |
| vs. § | Civil Action H-07-1352 | |
| § | | |
| § | | |
| B & B RESTAURANTS, INC., § | | |
| Defendant. § | | |
| § | | |
| § | | |

**Opinion on Summary Judgment**

Defendant B & B Restaurants, Inc. has filed a motion for summary judgment (Dkt. 21) in this Title VII race discrimination and hostile environment case. As explained below, B & B's motion is granted, and plaintiff Michelle Adams's complaint (Dkt. 1) is denied with prejudice.

**Background**

This lawsuit was spawned by a heated disagreement over a work schedule for Wendy's Restaurant in Clear Lake, Texas. On Saturday, November 11, 2006, plaintiff Michelle Adams became upset when she learned of a change made to the next week's work schedule by store manager Bianca Sanchez. According to Adams, whose version of events must be credited for purposes of this motion, Sanchez responded to Adams's complaint by screaming obscenities laced with racial slurs. The confrontation lasted for several minutes,

1

culminating when Sanchez retreated to her office and made a call to her supervisor, Chadi Sansal, telling him, in Adams's presence, to get the "nigger bitch out of her store." She repeated this phrase at least three times.

Sansal responded by sending Adams to work at a different store for the night, although Adams was still expected to report back to Sanchez's store the following day. While Sanchez would not be working on Sunday, Sansal told Adams that he would be present on Monday to the extent that Sanchez and Adams's schedules overlapped, and would talk to them then to attempt to work things out. Adams claims that because B & B did not immediately discipline Sanchez, she told her husband she did not want to go back and he told her to quit. When Sansal called Adams to attempt to work things out, Adams announced that she quit and hung up the phone. She never returned to work. Thereafter B&B investigated the incident, taking written statements from employees present during the confrontation. As a result, Sanchez was given a written reprimand, but received no further discipline.

B & B has moved for summary judgment on the following grounds (among others that need not be addressed): (1) Adams did not raise all her claims in her EEOC charge, and therefore cannot litigate them here; (2) Adams's resignation was not the result of working conditions so intolerable as to constitute constructive discharge; and (3) a single incident involving racial slurs is insufficient to constitute a hostile work environment based on race.

**Standard of Review**

To obtain summary judgment, B & B bears the burden of demonstrating that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact" and therefore judgment is appropriate as a matter of law. FED. R. CIV. P. 56(c). Summary judgment should issue if, after having adequate time for discovery, Adams has produced insufficient evidence to create a jury question on one or more of the essential elements of her claims. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986). In determining the existence of a genuine issue of material fact, the court will consider the evidence in the light most favorable to the nonmoving party. *Hotard v. State Farm Fire & Cas. Co.,* 286 F.3d 814, 817 (5th Cir. 2002).

**Analysis**

1. **Exhaustion of Administrative Remedies**

Before a Title VII litigant can bring her claims to court, she must first present them to the EEOC for investigation and possible conciliation with her employer. 42 U.S.C. § 2000e-5(e)(1); *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 47 (1974). Adams filed her EEOC charge on November 14, 2006, just three days after the incident in question. In paragraph 1 of her charge, Adams rehearses her version of the confrontation with store manager Sanchez, concluding with the statement that "[o]n November 12, 2006 I told Chadi Sansal I quit and could not take being in the same environment with [Sanchez]."[1] The

---

[1]   D.Ex. 2.

second paragraph complains that management knew about the racial slurs but took no action other than to send Adams to another store. The third and final paragraph asserts that this treatment constituted discrimination on account of her race.[2]

B&B contends that this charge is insufficient to exhaust administrative remedies with respect to Adams's claims of constructive discharge and racially hostile work environment. The court disagrees. The standard for defining the proper relationship between a Title VII lawsuit and the underlying EEOC charge was set forth in the seminal case of *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970). *Sanchez* teaches that the scope of the judicial complaint is limited to the scope of "the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.* at 466; *see also McClain v. Lufkin Indus.*, 519 F.3d 264, 273 (5th Cir. 2008). It is true, as B&B argues, that Adams did not use the phrase "constructive discharge" in her charge, but she did not need to. The first paragraph expressly states that Adams quit because she could no longer stand to work in that environment, a classic form of constructive discharge. *See, e.g., Pennsylvania State Police v. Suders*, 542 U.S. 129, 147-48 (2004) ("A constructive discharge involves both an employee's decision to leave and precipitating conduct . . . [which] may or may not involve official action."). The facts presented in paragraph one would certainly have triggered a constructive discharge investigation by the EEOC. Whether these allegations would actually support a *finding* of constructive discharge is another question entirely, as shown below. Nor

---

[2]   *Id.*

is there any doubt that the allegations in paragraph 2 would be sufficient to launch an EEOC investigation regarding a racially hostile work environment. Racial slurs are staple fare for such investigations. *See, e.g., Walker v. Thompson*, 214 F.3d 615, 626 (5th Cir. 2000) (fact issue raised on issue of hostile work environment based on racial comments); *EEOC v. WC&M Enterprises,* 496 F.3d 393, 400 (5th Cir. 2007) (EEOC brought hostile work environment claim on behalf of employee subjected to verbal harassment based on religion and national origin). Again, whether the facts alleged (*i.e.*, a single incident of harassment) would suffice to impose liability on this theory is an entirely different question.

Finally, B&B points out that Adams did not assert a claim of unlawful retaliation in her EEOC charge. This observation is true, but also irrelevant, because Adams has pled no such claim in her original complaint.[3] Thus, no retaliation claim is before the court.

In sum, Adams has satisfied the procedural requirements for pursuing the constructive discharge and hostile work environment claims asserted in her complaint.

## 2.     Constructive Discharge

The well-established test for constructive discharge is whether "working conditions [became] so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Pennsylvania State Police v. Suders,* 542 U.S. 129, 141 (2004). The test is rather stringent: a plaintiff claiming that her resignation was compelled by a hostile work environment "must demonstrate a greater severity or pervasiveness of harassment than

---

[3] The court earlier denied permission for Adams to file an amended complaint (Dkt. 40), so her original complaint remains the operative pleading in the case.

the minimum required to prove a hostile working environment." *Harville v. Westward Communications LLC,* 433 F.3d 428, 440 (5th Cir. 2005); *see also Suders,* 442 U.S. at 147 ("A hostile-environment constructive discharge claim entails something more.").

As discussed below, plaintiff's claim of racial harassment rests entirely upon a single ugly episode sparked by a work schedule dispute. Even assuming for the sake of argument that this lone verbal exchange created a hostile work environment, it hardly rises to the "intolerable" level necessary for constructive discharge. In *Landgraf v. USI Film Products,* for example, the Fifth Circuit found "substantial harassment" involving "continuous and repeated inappropriate verbal comments and physical contact" was insufficient to establish a constructive discharge. 968 F.2d 427, 430-31 (5th Cir. 1992). The working conditions of which Adams complains were neither "continuous and repeated" nor involved physical contact, and so fall well short of the *Landgraf* benchmark for intolerability.

Adams's constructive discharge claim also fails for another reason. An employee confronting intolerable working conditions must act reasonably. Among other things, this entails giving the employer notice and opportunity to remedy the situation. *See Aryain v. Wal-Mart Stores Texas LP,* 534 F.3d 473, 482 (5th Cir. 2008) (employee must make an effort to allow employer to remedy the problems identified); *Dornhecker v. Malibu Grand Prix Corp.,* 828 F.2d 307, 310 (5th Cir. 1987) ("part of an employee's obligation to be *reasonable* is an obligation not to assume the worst, and not to jump to conclusions too fast," *quoting Garner v. Wal-Mart Stores, Inc.,* 807 F.2d 1536, 1539 (11th Cir. 1987) (emphasis in

original).

It is apparent that Adams assumed the worst here. She resigned the next day after her encounter with Sanchez, giving management no chance even to investigate the incident, much less take appropriate remedial action. In its recent opinion in *Aryain,* the Fifth Circuit rejected a constructive discharge claim on closely analogous facts. Upset at being left off the work schedule of a department to which she had been recently transferred, Aryain resigned a day or two later, never having complained about negative treatment in that department. The court rejected her constructive discharge claim because "she assumed the worst and made no effort to allow Wal-Mart the opportunity to remedy the problems she identified" after the fact. 534 F.3d at 482. So too here, Adams's decision to leave her job without allowing B&B an opportunity to remedy the situation was unreasonable.

Thus, B&B is entitled to summary judgment on the constructive discharge claim because the working conditions Adams faced were not intolerable and because her precipitous resignation unreasonably denied B&B the opportunity to resolve the problem.

### 3.    Racially Hostile Work Environment

Title VII proscribes not only economic or tangible discrimination, but also racially-based harassment which is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an objectively hostile or abusive working environment. *See Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 67 (1986). To determine whether an environment is "hostile" or "abusive" the court must look at all the circumstances, including

7

"the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it interferes with the employee's work performance." *Harris v. Forklift Sys.,* 510 U.S. 17, 23 (1993). "Under the totality of the circumstances test, a single incident of harassment, if sufficiently severe, could give rise to a viable Title VII claim. . . ." *EEOC v. WC&M Enterprises,* 496 F.3d 393, 400 (5th Cir. 2007). However, "'mere utterance of an . . . epithet which engenders offensive feelings in an employee' does not sufficiently affect the conditions of employment to implicate Title VII." *Harris,* 510 U.S. at 21(*quoting Meritor*, 477 U.S. at 67).

Although plaintiff's counsel would have it otherwise,[4] Adams admitted in her deposition testimony that she had no other complaints of discrimination prior to the date of the incident in question, November 11, 2006.[5] According to her EEOC charge, Sanchez on that occasion "got close in my face and said 'Fuck you' three times."[6] She also yelled on the phone to her supervisor, "Get this nigger bitch out of my store."[7] Adams admitted that this was the only occasion that Sanchez had ever used either the F-bomb or the N-word in her presence.[8]

---

[4] Plaintiff cites an unauthenticated document purporting to be an amended EEOC charge asserting that the discrimination commenced on October 20, 2005. Even if this document were properly before the court, the record is entirely silent as to the events of that day.

[5] Adams Dep. at 22.

[6] D.Ex. 2.

[7] *Id*.

[8] *Id.* at 56.

None of the *Harris* factors support a finding of severe or pervasive harassment here. While the words used were unquestionably offensive, they were uttered on a single occasion, under circumstances that were not physically threatening. Adams does not claim that Sanchez assaulted or even touched her. Sanchez admitted losing her temper, but unchallenged eye-witness testimony makes clear that Adams's own behavior was provocative.[9] Nor did this incident interfere with Adams's work performance; she finished her shift at another store, and then quit the next day without giving her supervisor an opportunity to deal with her complaint.

This is simply not a workplace "permeated with discriminatory intimidation, ridicule, and insult" of the sort that the hostile work environment theory was designed to remedy. Title VII is not a general civility code, and does not convert every workplace argument into a federal case, even when curses and insults are exchanged. *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 80 (1998). On this record, no reasonable jury could find, based on this single unfortunate incident, a racially hostile or abusive work environment so severe or pervasive as to alter the conditions of Adams's employment.

## Conclusion

Summary judgment is proper because Adams has not demonstrated the existence of any material questions of fact with respect to the essential elements of her Title VII claims.

---

[9] According to Amanda Cantu's statement, Adams walked into Sanchez's office and berated her with these insults: "you are poor and unhappy," "your life is all messed up," "you have no money," "all your kids are in jail," and "your lights always get turned off." D.Ex. 3, Tab 8.

*See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Defendant's motion for summary judgment is granted. A separate final judgment will issue.

Signed at Houston, Texas on September 4, 2008.

Stephen Wm Smith
United States Magistrate Judge